**Affirmed and Memorandum Opinion filed April 9, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00992-CV

---

## IN THE INTEREST OF M.C.R. AND A.J.R., CHILDREN

---

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2011-00769**

---

## M E M O R A N D U M   O P I N I O N

Appellant, A.D.L., appeals the trial court's final decree terminating her parental rights to her children, M.C.R. and A.J.R.[1]  Following a bench trial, the trial court (1) involuntarily terminated the parent-child relationship between appellant and M.C.R. and A.J.R.; and (2) appointed the Department of Family and Protective Services ("DFPS") as sole managing conservator of M.C.R. and A.J.R. In one issue, appellant contends that the evidence is legally and factually

---

[1] We use initials to refer to appellant and her children in this case.  *See* Tex. Fam. Code Ann. § 109.002(d) (Vernon Supp. 2012); Tex. R. App. P. 9.8.

insufficient to support the trial court's finding that the termination of her parental rights is in the children's best interest.[2]  We affirm.

## Background

Appellant is the biological mother of M.C.R., age five, and A.J.R., age three. DFPS received a referral on December 23, 2010, alleging the sexual abuse of M.C.R. and that appellant "abuses the drugs 'sherm,' cocaine, and marijuana." M.C.R. "received a forensic interview" at the Children's Assessment Center but made no outcry of abuse or neglect.

Appellant also was interviewed and stated that she is unemployed, has no income, and receives food stamps.  Appellant stated that she has an 11-year-old son, S.R.,[3] who lives with her mother Linda Griffin-Shiloh because the school system is better in the area where her mother lives.  Appellant stated that she has "CPS history;" she had been removed from her mother's home when she was a teenager and placed into foster care because her mother was not protective when her stepfather sexually abused her.  Appellant first denied abusing drugs; however, on the way to drug testing, appellant admitted she "might test positive" for PCP and marijuana.  Appellant tested positive for PCP and marijuana.  She also admitted smoking marijuana since age 19 and admitted taking an ecstasy pill on New Year's Eve.

DFPS removed M.C.R. and A.J.R. from appellant's care because she tested positive for drugs, and "there were no viable alternative placements at the time." M.C.R. and A.J.R. were placed in a foster home together on January 5, 2011.

---

[2] Appellant does not appeal the trial court's appointment of DFPS as sole managing conservator of M.C.R. and A.J.R.  Therefore, only the trial court's decision to terminate the parent-child relationship of appellant and the two children is addressed in this appeal.

[3] Appellant's parental rights regarding S.R. are not at issue in this case.

DFPS filed a "petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship" on January 6, 2011. A family service plan was filed on March 3, 2011. Under the family service plan, appellant was required to maintain stable employment and housing; comply with her caseworker's visitation guidelines; maintain monthly contact with her caseworker; attend all court hearings and permanency conferences; successfully complete parenting classes; seek out drug treatment and admit herself to an inpatient drug treatment facility; if recommended, participate in outpatient drug treatment after discharge from inpatient treatment; attend an Alcohol Anonymous/Narcotics Anonymous program and adhere to all recommendations in that program; complete a psychiatric evaluation and follow all recommendations for further treatment; complete a psycho-social evaluation and follow all recommendations, including individual and/or group therapy; complete a substance abuse assessment and follow all recommendations; and submit to random urine analysis at least three times per month.

A bench trial was held on September 18, 2012. On October 16, 2012, the trial court signed its final decree of termination appointing DFPS as sole managing conservator of M.C.R. and A.J.R., and involuntarily terminating the parent-child relationship between appellant and M.C.R. and A.J.R. The court found by clear and convincing evidence that termination of the parent-child relationship is in the children's best interest, and that appellant:

- engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to §161.001(1)(E), Texas Family Code;

- failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the

3

permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children, pursuant to §161.001(1)(O), Texas Family Code.

Appellant filed a motion for new trial and a notice of appeal on October 29, 2012.[4]

## Analysis

Appellant raises one issue on appeal, contending that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in M.C.R's and A.J.R.'s best interests.

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). To terminate a parent-child relationship, a trial court must find by clear and convincing evidence that (1) termination is in the best interest of the child; and (2) the parent committed one or more of the acts specifically named in Family Code section 161.001. Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2012). "Clear and convincing evidence" is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007 (Vernon 2008).

When conducting a legal and factual sufficiency review in a parental rights termination case, we must determine whether the evidence is such that the factfinder reasonably could have formed a firm belief or conviction that its findings were true. *See In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In reviewing the legal sufficiency of the

---

4 Linda Johnson-Shiloh, appellant's mother and intervenor in the suit affecting parent-child relationship, also filed a notice of appeal; however, she did not file an appellate brief.

evidence, we examine all evidence in the light most favorable to the factfinder's findings. *In re J.F.C.*, 96 S.W.3d at 266. We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that does not support the finding. *Id*. This does not mean, however, that we disregard all evidence that does not support the finding, because disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id*.

In reviewing the factual sufficiency of the evidence, we must give due deference to the factfinder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We examine all of the evidence, giving due consideration to evidence that the factfinder could have reasonably found to be clear and convincing. *Id*. If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *Id*.; *In re J.F.C.*, 96 S.W.3d at 266.

On appeal, appellant concedes that legally and factually sufficient evidence supports the trial court's finding authorizing termination under Family Code section 161.001(1)(E) and (O); she contends only that the evidence is legally and factually insufficient to support the trial court's finding that termination was in M.C.R's and A.J.R.'s best interests.

A strong presumption exists that the best interest of the child is served by keeping the child with a natural parent, and the burden rests on DFPS to rebut that presumption. *In re S.M.L.*, 171 S.W.3d 472, 480 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). The factors used in a termination case to determine the best

interest of the child include: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *In re S.M.L.*, 171 S.W.3d at 480; *In re U.P.*, 105 S.W.3d at 230; *see also* Tex. Fam. Code § 263.307(b) (Vernon 2008) (listing factors to consider in evaluating parent's willingness and ability to provide the child with a safe environment).

This list is not exhaustive, nor is evidence required on all nine of the factors to support a finding terminating a parent's rights. *Holley*, 544 S.W.2d at 372; *In re U.P.*, 105 S.W.3d at 230. No one factor is controlling. *See In re C.H.*, 89 S.W.3d at 28. Evidence proving one or more of the statutory grounds for termination also may be probative in determining that termination is in the best interest of the child. *Id.*; *In re A.A.A.*, 265 S.W.3d 507, 516 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

At trial, there was evidence that appellant was using drugs at the time M.C.R. and A.J.R. were removed, and that appellant's drug use continued and even increased after the children's removal. Bruce Jeffries, an employee with the National Screening Center, testified that appellant tested positive for marijuana, PCP, ecstasy, and cocaine when this case began in early January 2011. The cocaine level showed that appellant had been "using cocaine quite often." Six months later in July 2011, appellant tested positive for marijuana, PCP, and

6

extremely high levels of cocaine. Jeffries testified: "[B]eing in business for 20 years at my office and looking at these drug tests, this is the highest level of cocaine reading in the urine that I've ever seen to this day." Jeffries also testified that, at the time of testing, appellant tried to pull out a bottle containing somebody else's urine out of her bra but was caught by an employee, Jackie Lopez, who confiscated the bottle. Jeffries testified that five months later in December 2011 appellant tested positive for cocaine and PCP; there were other drugs in appellant's system "but there wasn't enough hair to confirm" which other types of drugs were present. Jeffries testified that appellant had increased her drug use since the case began. Appellant was tested in May 2012 and again tested positive for cocaine.

DFPS caseworker Desmond Keller testified that M.C.R. and A.J.R. initially were removed from appellant because of her drug use. Keller testified that both children are living with a foster family who wants to adopt them, and DFPS is seeking to keep the children in this foster family with the goal of future adoption. Keller testified that the children have bonded with the family and are doing well.

Keller testified that he discussed DFPS's family service plan with appellant, and that appellant signed the plan on March 3, 2011. Keller stated that the plan required appellant to (1) complete a psycho-social evaluation; (2) participate and successfully complete individual counseling; (3) participate and complete parenting classes; (4) participate in a drug assessment and follow all recommendations; (5) successfully complete an inpatient treatment program; (6) maintain stable employment and stable housing; and (7) comply with random drug testing.

Keller testified that appellant failed to complete any of the services required under the family service plan other than completing a psycho-social evaluation. Keller testified that appellant (1) started attending therapy sessions but stopped

7

attending in July 2011; (2) was discharged from an inpatient and outpatient treatment program; (3) presented a parenting class certificate, "but the validity of that certificate was in question due to the circumstances of her discharge from her inpatient treatment;" (4) left the inpatient treatment before being discharged and against professional advice; (5) failed numerous drug tests or failed to appear for drug testing; and (6) failed to maintain employment.

Keller testified that he had regular contact with appellant until a court hearing in August. He testified that he did not know appellant had been arrested for unlawfully carrying a weapon, pleaded guilty to the offense, and was sentenced to twelve days in jail. Keller testified that this offense and appellant's habitual drug use constituted a violation of the family service plan appellant signed.

Keller also testified that DFPS did not consider appellant's mother Johnson-Shiloh to be a proper placement for M.C.R. and A.J.R., even though appellant's older son had been living with Johnson-Shiloh for several years, because Johnson-Shiloh had "significant CPS history." According to Keller, Johnson-Shiloh admitted knowing that her husband had been sexually abusing appellant in 1992, but failed to protect appellant and continued living with the husband. Johnson-Shiloh's current husband was convicted of murder in 1976, served a six-year sentence, and was on probation thereafter for ten years. Keller testified that Johnson-Shiloh provided appellant with a cell phone during her inpatient treatment, which is against program rules.

Keller emphasized that both children have been living with the foster parents for approximately eighteen months, are thriving, and are attached to the foster parents. The foster parents want to adopt both children and are "willing to foster or maintain some type of contact with the grandmother."

Guardian ad litem Maude Trottie testified that she has been involved in the

case since May 2011. She testified that M.C.R. and A.J.R. are doing "great" and progressing well in their foster parents' care. Trottie opined that the foster family is an "appropriate adoptive placement" and asked the court to terminate appellant's parental rights so that the children can be adopted. Trottie also testified that it is in the children's best interest to be adopted.

Appellant argues that "the record is silent as to the relationship between the mother and her children. Without testimony as to the bond the children may have with their mother, there can be no legal or factual basis to support a finding that termination of the mother's parental rights is in the best interest of her children."

"'Best interest' does not require proof of any unique set of factors, and it does not limit proof to any specific factor." *In re K.L.A.C.*, No. 14-08-00960-CV, 2010 WL 184152, at *5 (Tex. App.—Houston [14th Dist.] Jan. 21, 2010, no pet.) (mem. op.) (citing *In re S.M.L.*, 171 S.W.3d at 480). Further, appellant did not attend the trial and offered no evidence of "the bond the children may have with their mother," her ability to care for the children, or her plans to care for the children in the future. Appellant's trial counsel merely stated: "I can sum up my testimony. The mother's not here, so I was going to question her on the record, but I'd like to testify and I can sum up my testimony by saying the mother's information she gave to me is entirely consistent with the testimony of the caseworker on the record here today in response to my questions."

Viewing all the evidence in the light most favorable to the judgment, we conclude that a factfinder could have formed a firm belief or conviction that termination of appellant's parental rights was in M.C.R.'s and A.J.R.'s best interests. *See* Tex. Fam. Code § 161.001(2); *In re J.F.C.*, 96 S.W.3d at 265-66. Viewing the same evidence in a neutral light, the fact that there was no evidence presented regarding the "bond the children may have with their mother" does not

prevent a factfinder from forming a firm belief or conviction that termination of appellant's parental rights was in M.C.R.'s and A.J.R.'s best interests. *See* Tex. Fam. Code § 161.001(2); *In re H.R.M.*, 209 S.W.3d at 108. Accordingly, the evidence is legally and factually sufficient to support the trial court's finding that termination of appellant's parental rights was in M.C.R.'s and A.J.R.'s best interests. We overrule appellant's sole issue.

## Conclusion

We affirm the trial court's judgment.


/s/    William J. Boyce
        Justice


Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.